*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LOUIS JAMES DILLARD,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2019

No. 337517
Wayne Circuit Court
LC No. 16-007422-01-FH

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with person less than 13 years of age), and accosting a child for an immoral purpose, MCL 750.145a. He was sentenced as a third-offense habitual offender, MCL 769.11, to 57 months to 30 years' imprisonment for the CSC-II conviction and four to eight years' imprisonment for the accosting conviction. We affirm.

On March 22, 2016, the twelve-year-old victim was walking to a friend's house after school when defendant called out to her from across the street. The victim crossed the street and talked to defendant. He offered her $5 if she would let him perform oral sex on her. When the victim refused, defendant grabbed her by the right arm and the victim "felt [her] buttocks on [defendant's penis]." The victim then ran away from defendant and found the brother of one of her friends further down the street. She used the man's phone to call her grandmother. She told her grandmother what happened. After speaking to her grandmother, the victim went to her friend's house and called her grandmother again. The victim waited for her grandmother to pick her up, but when she failed to appear, the victim left and started walking to a different friend's house. On her way there, the victim saw defendant again, and he said to her, "Hey little lady[,] [d]o you want me to do that?" The victim told defendant to "leave [her] alone," and she then went to her second friend's house. The victim talked to her grandmother on the phone while at the second friend's house and later met up with her grandmother.

After meeting and speaking to the victim, her grandmother took the victim to a liquor store because she learned that defendant might be there. When they arrived, defendant was

already gone, and the owner of the liquor store called the police. The victim and her grandmother then told the police what happened and later identified defendant.

Defendant first argues on appeal that trial counsel was ineffective for numerous reasons. A *Ginther*[1] hearing took place below; therefore, our review includes consideration of the evidence presented at that hearing. See, e.g., *People v Trakhtenberg*, 493 Mich 38, 45-46; 826 NW2d 136 (2012). We review for clear error factual findings made by a trial court at a *Ginther* hearing. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, stating:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *Trakhtenberg*, 493 Mich at 52. Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015). The failure to present certain evidence or to call a witness constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). A defense is substantial if it might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant argues that trial counsel was ineffective because counsel never visited defendant in jail and only met with and spoke to him in court surrounded by other inmates in the courthouse bullpen. It is true that counsel never visited defendant in jail, but they were able to meet multiple times at the courthouse. And at these meetings they discussed trial strategy and potential witnesses for the defense. The trial court could not find any evidence of disagreement between defendant and counsel regarding trial strategy, noting that counsel implemented defendant's preferred strategy of attempting to impeach the victim. There was no error in this finding. Regarding the alleged lack of a private setting to communicate, defendant does not assert or show that it altered or limited in any manner his discussion of trial strategy and witnesses. Stated otherwise, defendant fails to demonstrate that a different approach to the defense or course of action would have been taken absent the purported lack of privacy. Accordingly, the record does not establish that counsel's performance was deficient or that there was prejudice to defendant.

Next, defendant maintains that trial counsel was ineffective because he failed to assist in investigating the case and locating witnesses, instead leaving it to defendant and making it defendant's responsibility to take care of those matters. According to defendant, although he attempted to investigate and locate witnesses by himself, health issues, restrictions on his movements due to the terms of his bond, lack of resources, and other limitations precluded defendant from engaging in the necessary investigation. The proposed witnesses were defendant's girlfriend, his pastor, and a person only identified as "Fred." Before being released on bond, defendant's trial attorney twice moved to have defendant released on bond so defendant could help find the witnesses, and this was after defense counsel informed the trial court that the court-appointed investigator had been unable to locate the witnesses. Despite being free on bond for over a month before trial, defendant was unable to contact any of the witnesses, and, according to trial counsel, defendant failed to ask the investigator for further assistance in finding his witnesses during this timeframe. Additionally, the trial court accurately indicated that defendant's appellate counsel had been unable to locate any of the witnesses in the six months that she had been representing defendant. We believe that the trial court reasonably concluded that these "witnesses" were reluctant or unwilling to testify or knew nothing about the case. Finally, there is simply no evidence, not even an affidavit, showing the nature of the testimony the witnesses would have given if called to testify at trial. Accordingly, the record does not establish deficient performance by counsel or prejudice to defendant.

Defendant also argues that trial counsel was ineffective because counsel failed to answer or return defendant's phone calls after he was released on bond. Defendant testified at the *Ginther* hearing that such was the case. Trial counsel, however, testified that defendant did not answer or return any of counsel's phone calls while defendant was out on bond. Regardless of the conflicting evidence, and assuming that defendant is correct in asserting that counsel's testimony on the matter was not credible, defendant fails to demonstrate how counsel's alleged failure to answer or return his phone calls prejudiced him in any way. In sum, defendant's claims of ineffective assistance of counsel do not warrant reversal.

Defendant's second and final argument on appeal is that the prosecutor improperly shifted the burden of proof to defendant during closing argument when she asked the jury to convict defendant if it found defendant's testimony to be unreasonable. On this unpreserved issue, defendant fails to establish plain error affecting his substantial rights. *People v Carines*,

460 Mich 750, 763-764; 597 NW2d 130 (1999). In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court explained:

> Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [Citations and quotation marks omitted.]

"A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).

In relevant part, the prosecutor here remarked in closing arguments that the victim had no "motive to lie" and that witnesses corroborated certain aspects of the victim's testimony. The prosecutor also commented that the victim's testimony about what happened "never wavered." The prosecutor further argued that defendant's story—that he never grabbed the victim or offered her $5 to allow him to perform oral sex on her—was not "reasonable." Immediately after stating that defendant's version of events was not reasonable, the prosecutor told the jury "to certainly hold me to my standard of proof beyond a reasonable doubt, but please don't increase my burden you know to beyond all doubt or beyond a shadow of a doubt." Additionally, when discussing the specific elements of the charged offenses, the prosecutor repeatedly stated that she was the party who "need[ed] to prove" each element of the charged offenses. The prosecutor's statements in no way shifted the burden of proof to defendant, expressly or implicitly. The prosecutor's remark calling into question the reasonableness of defendant's account of what transpired was not improper. See *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005) ("attacking the credibility of a theory advanced by a defendant does not shift the burden of proof"). Thus, contrary to defendant's argument, the prosecutor did not shift the burden of proof to defendant during her closing argument. There was no prosecutorial misconduct, and reversal is unwarranted.

We affirm.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

-4-