*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAURO ESPINO,

        Defendant-Appellant.

UNPUBLISHED
October 30, 2024
10:50 AM

No. 363814
Van Buren Circuit Court
LC No. 2020-022758-FH

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

K. F. KELLY (*concurring in part and dissenting in part*).

I agree with the majority's conclusion that defendant waived any claim of instructional error when his trial attorney approved the lower court's jury instructions. However, in my view, it is not a close question whether defendant was deprived the effective assistance of counsel because a duress instruction was not requested by his attorney. Defendant became angry after his girlfriend told him that the victim assaulted her at work. As a result, defendant not only went to the victim's house *looking for a fight*, the uncontradicted testimony was that *he violently started one* in an apparent act of retribution. When it became clear defendant was going to lose that fight, he fled and killed the victim with his car. Because defendant cannot carry his heavy burden to show that the outcome of the trial would have been different had the instruction been given, I would affirm defendant's convictions, and I respectfully dissent from the majority's conclusion that defendant is entitled to a new trial.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On August 21, 2020, the victim and Gloria Ortega—defendant's girlfriend—got into an altercation at a pepper plantation where the victim, Ortega, and defendant worked. Defendant told law enforcement that the victim assaulted his girlfriend and he went to the victim's house with a friend to confront the victim. A neighbor testified that he saw two individuals park and leave their vehicle, a white truck, with the engine on. Juan Gonzalez Hernandez, the uncle of the victim by marriage, stated that he saw defendant's white pickup truck parked that night and that he saw defendant and another individual hitting another one of the victim's uncles, Hugo de la Rosa, with

-1-

a pipe or a bat. Hernandez testified that he, his wife, the victim's father, and the victim chased after defendant because they did not want him to escape.

The neighbor testified that he later saw the two individuals—defendant and his friend—running back to their truck. As the two got back into their truck and shut the doors, three individuals, including the victim, caught up to them and began hitting the truck with their sandals. Hernandez testified that he went to the passenger side of defendant's truck, and the victim went to the driver's side, hanging onto the truck on the outside of the door. The truck started moving "fast" as defendant "stepped on the gas." As defendant was driving away, the truck drove over some large shrubs and then hit a telephone pole. Defendant fled the scene, and the victim was subsequently found deceased and lying on the ground.

After defendant was convicted, he moved for a new trial, arguing that his trial attorney was ineffective for not requesting jury instructions related to duress and self-defense. The trial court denied the motion, stating, as relevant here, that defendant

> has not established that trial counsel's failure to request a duress instruction fell below an objective standard of reasonableness, or undermine[d] confidence in the trial. The defense of duress is not available when the threatening conduct that compelled a defendant's criminal act arose due to the negligence or fault of the defendant.

I agree with the trial court.

## II. STANDARDS OF REVIEW

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*.

## III. ANALYSIS

"To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 8677 NW2d 452 (2015) (quotation marks and citations omitted). "Whether defense counsel's performance was deficient is measured against an objective standard of reasonableness." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Thus, "[t]o succeed on a claim of ineffective assistance of counsel, the defendant must show that, but for an error by counsel, the result of the proceedings would have been different, and that the proceedings were fundamentally unfair or unreliable." *Petri*, 279 Mich App at 410. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (quotation marks and citation omitted).

The affirmative defense of duress "is a common-law affirmative defense" that "is applicable in situations where the crime committed avoids a greater harm." *People v Lemons*, 454

Mich 324, 245-246; 562 NW2d 447 (1997). "The rationale of the defense of duress is that, for reasons of social policy, it is better that the defendant, faced with a choice of evils, choose to do the lesser evil (violate the criminal law) in order to avoid the greater evil threatened by the other person." *Id*. at 246 (quotation marks and citation omitted). "In order to properly raise the defense, the defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of duress are present." *Id*. (quotation marks and citation omitted). Thus, the defendant must produce "some evidence" of the following:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
>
> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
>
> D) The defendant committed the act to avoid the threatened harm. [*Id*. at 247 (footnote omitted).]

In *Lemons*, the Michigan Supreme Court further clarified that "[t]he threatening conduct or act of compulsion must be present, imminent, and impending, that a threat of future injury is not enough, and that the threat must have arisen *without the negligence or fault of the person who insists upon it as a defense*." *Id*. (quotation marks and citation omitted; citation cleaned up and emphasis added).

The majority concludes that defendant is entitled to a new trial because, in their view, the outcome of the trial would have been different had the instruction been given. This is because "the jury may have understood Espino to be at risk of serious harm had he stayed at the scene where his vehicle hit a telephone pole." *People v Espino*, unpublished per curiam opinion of the Court of Appeals, issued ___ (Docket No. 363814), p 10. While the speculation regarding what the jury believed may be true—it may not—I respectfully disagree that it is relevant to the determination of whether the jury believed that defendant was negligent or at fault for causing the death to occur in the first place.

According to defendant, his girlfriend was assaulted at work. Instead of either party calling the police, defendant and his friend drove to the victim's house with the intention of causing physical harm. And there is no dispute among the witness testimony that defendant instigated the altercation by beating the victim's uncle with a pipe or bat. Only when it became clear to defendant that the victim and his family were going to defend their family member from serious harm did defendant attempt to extricate himself from the situation. Under this set of facts, I have little trouble concluding that there was not a reasonable probability that the jury would have concluded that defendant was neither negligent nor at fault for causing the very threat from which he was attempting to flee.

The majority incorrectly relies on the jury's decision to acquit defendant on the charge of leaving the scene of an accident causing death. This is a mistake because to decide defendant's culpability for that crime, the jury was never asked to determine whether defendant was negligent

or at fault for the accident that he later fled from. See MCL 257.617 (stating that a driver who is "involved in an accident" is required to remain at the scene). Had the jury been asked to make such a determination, I have little doubt that the jury would have concluded that defendant, at minimum, was negligent in causing the accident when he drove over the shrubs and struck the pole. Moreover, the two issues are conceptually distinct. Defendant's criminal culpability related to his decision to go to the victim's house and violently beat the victim's uncle with blunt force is, for purposes of this analysis, completely unrelated to whether the jury believed defendant's continued presence at the scene would result in further harm. As a result, I cannot conclude that defendant was deprived the effective assistance of counsel, and I respectfully dissent.

/s/ Kirsten Frank Kelly