*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIMOTHY TRESHAEN RICE,

Defendant-Appellant.

UNPUBLISHED
September 22, 2025
2:22 PM

No. 367761
Wayne Circuit Court
LC No. 15-006190-01-FC

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendant appeals as on leave granted[1] the trial court's order denying his motion for relief from judgment (MFRJ). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2015, a jury convicted defendant of second-degree murder, MCL 750.317; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court subsequently sentenced defendant to serve concurrent terms of 30 to 60 years' imprisonment for second-degree murder and 40 to 60 months' imprisonment for felon-in-possession, to be served consecutively to two years' imprisonment for felony-firearm. Defendant appealed,[2] and this Court affirmed his

---

[1] Following this Court's denial of defendant's delayed application for leave to appeal, *People v Rice*, unpublished order of the Court of Appeals, entered January 2, 2024 (Docket No. 367761), our Supreme Court remanded to this Court "for consideration as on leave granted," *People v Rice*, ___ Mich ___ (2024) (Docket No. 166765).

[2] Following this Court's denial of defendant's delayed application for leave to appeal, *People v Rice*, unpublished order of the Court of Appeals, entered November 3, 2016 (Docket No. 333634), our Supreme Court remanded and directed this Court to "treat the defendant's application for leave to appeal as a timely filed brief on appeal" so that his appeal could "proceed . . . as an appeal of right," *People v Rice*, 500 Mich 998 (2017).

-1-

convictions. *People v Rice*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2018 (Docket No. 333634). In connection with that appeal, this Court detailed the facts underlying defendant's convictions, see *id*. at 1-2, but to summarize for purposes of this appeal: In the early morning hours of July 5, 2015, defendant fatally shot the victim, Kevin Brown, during a dispute outside a family gathering of defendant's then-girlfriend, Kennetta Simmons (Kevin's niece). *Id*. Simmons had lent her car to defendant the morning prior, and so she had ridden with her father, Kenneth Brown (Kevin's brother), to the family gathering. *Id*. at 2. Later that evening, pursuant to Simmons's request, defendant picked Simmons up from the gathering in her car. *Id*. After receiving multiple calls from her family members to return to the gathering, however, Simmons drove back, with defendant in the front passenger seat and defendant's brother, Joshua Ragland, in the back driver-side seat. *Id*.

After they arrived and parked Simmons's car in the street, defendant and Ragland waited in the car while Simmons went inside to the gathering, where she remained for a brief period of time before leaving again. *Id*. Kenneth and Kevin—and Simmons's stepmother, Leslie Caldwell, shortly thereafter—followed Simmons outside because they wanted to know who she was with. *Id*. at 2, 4. According to Kenneth, as he and Kevin approached the car, they saw defendant jump over from the driver seat to the passenger seat. *Id*. at 2. Kenneth and Kevin then told both defendant and Ragland to get out of Simmons's car. *Id*. A verbal altercation ensued, and defendant and Ragland slowly got out of the car. *Id*. As defendant did so, he told Simmons to open the trunk, which she did. *Id*. Kenneth and Kevin were upset to see a young man whom they did not know driving Simmons's car, and although Kevin tried to pick a fight with defendant, Kenneth blocked him and said "come on bro chill I got this[,] chill." *Id*. According to multiple witnesses' testimony at trial, Kevin was agitated and confrontational with defendant but never touched him during this time. *Id*. at 2, 4.

Defendant eventually walked to the open trunk and went to remove something from it, but Kevin attempted to close the trunk and told defendant he did not need whatever it was he was looking for in there. *Id*. at 2. Defendant then removed a pair of pants from the trunk and Kevin asked him what he had in the pocket, when suddenly there was a gunshot and Kevin collapsed to the ground. *Id*. Kenneth ran into the house to call 911, and defendant and Ragland fled on foot. *Id*. While doing so, defendant turned around, brandished the gun, and shouted a threat at the witnesses before continuing to flee. *Id*. Kevin was eventually transported to the hospital, where he later died from his injuries, and defendant was arrested for the shooting the following day. *Id*.

At trial, the prosecution presented testimony from several eyewitnesses, including Kenneth, Simmons, Caldwell, Monica Brown (Kevin's mother), and Tamika Brown (Kevin's sister), as well as testimony from various individuals involved in the investigation of the shooting. The parties also stipulated to the admission of certain evidence regarding the shooting and defendant's prior felony conviction, which precluded him from possessing a gun at the time of the shooting. The defense's core theory at trial was that defendant fatally shot Kevin, but he only did so in self-defense because Kevin threatened and attacked him. The defense did not present any witnesses (including defendant) and instead relied on the testimony of the prosecution's witnesses to make its case.

As noted, defendant was convicted by a jury and subsequently appealed to this Court. See generally *id*. While his appeal was pending, defendant also filed with this Court a motion to

remand to the trial court for a *Ginther*[3] hearing, arguing, in relevant part, that his trial counsel provided constitutionally ineffective assistance because counsel failed to call Ragland as a witness despite defendant's requests that he do so, thereby denying defendant the substantial defense of self-defense. Defendant attached to the motion his own affidavit as an offer of proof, but he did not attach an affidavit from Ragland. This Court denied defendant's motion to remand for failure to "demonstrate[] that further factual development of the record . . . [wa]s necessary at th[at] time in order for this Court to review the issues on appeal," *People v Rice*, unpublished order of the Court of Appeals, entered December 21, 2017 (Docket No. 333634), and subsequently issued an unpublished opinion affirming defendant's convictions, see *Rice*, unpub op at 1, 5. Defendant then filed an application for leave to appeal with our Supreme Court, which the Court denied. *People v Rice*, 502 Mich 940 (2018).

In November 2019, defendant, *in propria persona*, filed the instant MFRJ with the trial court, arguing, in relevant part, that he was entitled to postjudgment relief because his trial counsel was ineffective for failing to call Ragland as a witness at trial and his appellate counsel was ineffective for failing to attach an affidavit from Ragland to defendant's motion to remand as an offer of proof. In support, defendant attached to his MFRJ a June 25, 2019 affidavit from Ragland that detailed what he witnessed on the night of the shooting. The trial court denied defendant's MFRJ. In doing so, the court declined to substantively address defendant's ineffective-assistance claims, noting that because the same challenge to trial counsel's failure to call Ragland as a witness "ha[d] previously been raised and decided by" this Court and defendant "d[id] not set forth any retroactive change in the law," the court was precluded from reviewing the issue or affording defendant the relief he requested.

In November 2020, defendant, *in propria persona*, filed with this Court a delayed application for leave to appeal and a motion to remand for a *Ginther* hearing regarding his ineffective-assistance claims. Defendant argued that the trial court erred by declining to conduct a *Ginther* hearing to address his ineffective-assistance claims and by "ignor[ing]" Ragland's affidavit, whose testimony likely would have changed the outcome at trial. This Court denied defendant's motion to remand and delayed application for leave to appeal. *People v Rice*, unpublished order of the Court of Appeals, entered February 4, 2021 (Docket No. 355609).

Defendant then filed an application for leave to appeal with our Supreme Court in March 2021. In February 2022, "in lieu of granting leave to appeal," our Supreme Court remanded to the trial court "for reconsideration of the defendant's claims that trial counsel rendered constitutionally ineffective assistance for failing to interview and call at trial a res gestae witness, and that appellate counsel rendered constitutionally ineffective assistance for failing to obtain an affidavit from the witness in support of a motion to remand." *People v Rice*, 509 Mich 854 (2022). The Court denied leave "[i]n all other respects" because defendant "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Id*.

Defendant received appointed counsel shortly after the matter was remanded to the trial court. On remand, the trial court reconsidered defendant's ineffective-assistance claims on their merits and denied his MFRJ "for failure to establish entitlement to relief in the grounds presented."

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The court did not hold a *Ginther* hearing on defendant's claims. The court acknowledged the substance of Ragland's affidavit but concluded that his testimony "would have been cumulative to the testimony already provided at trial by way of cross examination of the prosecution's witnesses." The court also concluded that trial counsel's decision not to present Ragland as a witness was "sound trial strategy" because Ragland "would have been subject to cross examination" and counsel could have reasonably "believed that it would be more advantageous to raise the issue of self-defense through the testimony of the prosecution['s] witnesses." The court further concluded that defendant's appellate counsel was not ineffective for failing to attach Ragland's affidavit to defendant's motion to remand because "the issue of self-defense was presented to the jury through the testimony of" the prosecution's witnesses and "[t]here [wa]s no reasonable probability that, but for counsel's failure to present the affidavit in the defendant's direct appeal, the result of that appeal would have been different."[4]

In September 2023, defendant, with the continued assistance of counsel, filed a delayed application for leave to appeal the trial court's post-remand order denying his requested relief. This Court denied the delayed application. *People v Rice*, unpublished order of the Court of Appeals, entered January 2, 2024 (Docket No. 367761). Defendant then sought leave to appeal *in propria persona* with our Supreme Court, which remanded to this Court "for consideration as on leave granted." *People v Rice*, ___ Mich ___ (2024) (Docket No. 166765). Defendant, with the assistance of new counsel, thereafter filed a brief on appeal with this Court, arguing that the trial court erred by rejecting defendant's claim that trial counsel's failure to call Ragland as a witness was ineffective and by failing to hold a *Ginther* hearing on the matter. Defendant also filed a motion to remand for such a hearing, which this Court denied "for failure to persuade th[is] Court of the necessity of a remand at th[at] time" but "without prejudice to a case call panel of this Court

_____

[4] The trial court also considered, and ultimately rejected, defendant's argument that Ragland's affidavit constituted "newly discovered evidence" that entitled him to postjudgment relief. In the delayed application he subsequently filed with this Court seeking leave to appeal the trial court's decision, defendant did not challenge this aspect of the decision or make any further argument regarding whether Ragland's affidavit constituted "newly discovered evidence" entitling him to relief. Nor has he done so in his ensuing brief on appeal before this Court. Rather, defendant solely focuses on the merits of his ineffective-assistance claim. Our analysis is correspondingly limited to that claim.

In addition, defendant, in his brief on appeal before this Court, does not challenge the trial court's conclusion that appellate counsel did not provide constitutionally ineffective assistance. Accordingly, we limit our analysis to whether trial counsel provided ineffective assistance. And in any event, given the analysis of that claim set forth in this opinion, we do not see grounds to conclude that defendant would be entitled to relief for any shortcomings in appellate counsel's handling of the claim.

determining that remand is necessary once the case is submitted on a session calendar." *People v Rice*, unpublished order of the Court of Appeals, entered April 1, 2025 (Docket No. 367761).[5]

## II. ANALYSIS

On appeal, defendant argues that his trial counsel was ineffective for failing to call Ragland as a defense witness at trial because, as a result of Ragland's absence, he could not duly pursue his theory of self-defense or the lesser-included offense of voluntary manslaughter. According to defendant, the trial court erred by not awarding him relief on this basis or holding a *Ginther* hearing on the matter. We disagree.

Defendant "has the burden of establishing entitlement to the relief requested" in his MFRJ. MCR 6.508(D). Whether counsel was ineffective presents a mixed question of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. This Court presumes counsel was effective, and a defendant carries a heavy burden to overcome that presumption. *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022). This burden includes "overcom[ing] the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). That said, "a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015) (quotation marks and citation omitted).

We agree with the trial court's conclusion in this case that defendant has failed to "overcome the strong presumption" that trial counsel's decision not to call Ragland as a witness "was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. To start, the existing record makes clear both that counsel was aware of Ragland as a potential witness and that counsel was actively assessing what witnesses and evidence would best serve defendant's case at trial. As defendant acknowledges in his brief on appeal, his trial counsel listed Ragland on defendant's pretrial witness list, and the record reflects that counsel stated at a pretrial hearing that the defense contested the factual allegations against defendant and believed that defendant had a viable defense against the open-murder charge. The record also reflects that midway through trial—after the prosecution rested but before the defense presented its case—defense counsel probed the court in an attempt to determine if it agreed with the defense's position that the existing proofs were

---

[5] Defendant subsequently filed another motion for remand with this Court, renewing his request for a *Ginther* hearing. For the reasons set forth in this opinion, however, we conclude that such a remand is not necessary to the proper disposition of this appeal.

sufficient for a self-defense instruction "before [the defense] ma[de] any decisions on . . . what witnesses [it was] going to call or if the defendant [wa]s going to take the stand" to testify on his own behalf.[6] Then, at the start of trial the following day, counsel indicated that the defense wished to rest its case without calling any other witnesses (including defendant), and the court ultimately provided a self-defense instruction as requested by counsel. Counsel's decisions regarding what witnesses to call at trial, if any, are generally a matter of trial strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and it is apparent from the existing record that counsel considered the possibility of presenting witnesses such as Ragland but decided against doing so. Defendant has failed to show that this decision was anything but strategic. See *Trakhtenberg*, 493 Mich at 52.

Nor has defendant overcome the presumption that this strategic decision was objectively reasonable. See *Ackley*, 497 Mich at 388-389; *Trakhtenberg*, 493 Mich at 52. The sole support that defendant offered to the trial court was Ragland's 2019 affidavit, but that affidavit in itself betrays why not calling Ragland as a witness would have been sound trial strategy. Namely, pursuant to the affidavit, Ragland would have testified that, after defendant spoke to Simmons on the phone while defendant and Ragland were waiting in Simmons's car, defendant "pulled out a gun and placed it in between the seat and gearshift" and told Ragland, " 'Their [sic] go her people, they finna trip.' " Immediately thereafter, Kenneth and Kevin—with Simmons and Caldwell nearby—confronted defendant and Ragland in the car, and defendant then fatally shot Kevin. Taken as true, such testimony seemingly suggests that defendant anticipated a confrontation and intentionally armed himself with a gun before ever being presented with any purported threat from Kevin, which would have supported the premeditation element of first-degree murder and undermined defendant's theory of self-defense. Defendant stresses that other aspects of Ragland's account would have supported his defense. But as the trial court concluded, it would have been objectively reasonable for counsel to decide that the overall risks presented by Ragland's testimony (and cross-examination on the same) outweighed any potential benefits from it, and to instead choose to make defendant's case through the testimony of the prosecution's witnesses.

To further support his ineffective-assistance claim on appeal, defendant recently provided two additional declarations: one from his current appellate counsel, and the other from his mother. None of this was presented previously or below. But even if these declarations were properly submitted on appeal and duly considered by this Court, they too are inadequate to overcome the presumption that trial counsel's decision not to call Ragland as a witness was sound trial strategy. See *Ackley*, 497 Mich at 388-389; *Trakhtenberg*, 493 Mich at 52. The declaration from defendant's current appellate counsel indicates that she spoke to Ragland in January 2025 and that Ragland informed her that trial counsel did not speak to him before or during trial about being called as a witness at trial. This information, however, is wholly absent from Ragland's own affidavit. Nor has appellate counsel offered any supplemental affidavit from Ragland. Appellate counsel's declaration is also seemingly at odds with defendant's previous representation in his delayed

---

[6] The court declined to substantively opine on the matter at that time.

-6-

application for leave to appeal that trial counsel *did* speak to Ragland about testifying at trial.[7] And as for the declaration from defendant's mother, it indicates that trial counsel was well aware of Ragland's presence at the shooting and had attempted to contact him.

In sum, nothing defendant has offered—before the trial court or now on appeal—casts meaningful doubt on the "strong presumption" that trial counsel's decision not to call Ragland as a witness was "born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Because defendant has failed to show that trial counsel's performance was deficient, he is not entitled to relief on his claim of ineffective assistance. See *Muniz*, 343 Mich App at 448; *Shaw*, 315 Mich App at 672. Accordingly, the trial court did not reversibly err by denying this claim when reconsidering it on remand.

Defendant also asks this Court to remand for a *Ginther* hearing if it "is unwilling to reverse [his] convictions outright," arguing that the trial court, at minimum, should have conducted such a hearing before rejecting his ineffective-assistance claim. Defendant, however, has failed to "demonstrate[] any issue for which further factual development would advance his claim." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009); see also MCR 7.211(C)(1)(a) (providing, in relevant part, that a motion to remand "must . . . show . . . that development of a factual record is required for appellate consideration of the issue" and "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing"). As discussed, the existing record indicates that trial counsel's decision not to call Ragland as a defense witness was reasonably strategic, and the additional materials defendant has provided, even when accepted on their face, do not indicate otherwise. Defendant has thus failed to show that a *Ginther* hearing is necessary to properly dispose of his ineffective-assistance claim or that the trial court erred by not holding one.

Defendant has not demonstrated that trial counsel performed deficiently in failing to call Ragland as a witness at trial or that a *Ginther* hearing is necessary to duly review and resolve his claim of ineffective assistance to that effect. As defendant has failed to show entitlement to relief on the basis of this claim, see MCR 6.508(D), we see no grounds to reverse the trial court's denial of his MFRJ.

Affirmed.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock

---

[7] Specifically, in defendant's delayed application for leave to appeal with this Court, defendant's appellate counsel at the time stated (albeit without a supporting affidavit or offer of proof): "In actuality, counsel has learned through his client that his [trial] attorney tried to reach Joshua [Ragland] to testify but that he was afraid to come forward due to his fear of being implicated for reasons related to ownership of the gun." At no point over the course of his posttrial proceedings has defendant offered an affidavit from trial counsel or made any other offer of proof regarding what, if any, testimony counsel would provide if a *Ginther* hearing on defendant's ineffective-assistance claim were held.